UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PAUL ECKERMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13-cv-04002-SLD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Paul A. Eckermann appeals the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying his applications for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* This matter comes before the Court on the Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendant's Motion for Summary Affirmance, ECF No. 14. For the following reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Affirmance.

## BACKGROUND

I.  Facts

Eckermann began psychiatric treatment in April 2004, at the age of 17, for paranoid schizophrenia and extreme anxiety symptoms. R. 22, 41. Despite his mental difficulties, with

1

the help of special accommodations for students with disabilities, he graduated college a semester early with a degree in business management. R. 41–42. He played varsity tennis for one year while in college, sometimes traveling with the team. R. 45–46. He had two hospital stays for psychotic breakdowns during this period. R. 22. Eckermann claims his symptoms worsened following graduation, and he found himself taking additional medication to combat more severe anxiety. R. 50–51. The medication caused daytime drowsiness, but Eckermann eventually switched to a medication with fewer side effects, and his fatigue lessened. R. 51.

After graduation, he was hired to work as an item manager at the Rock Island Arsenal for the U.S. Department of Defense. R. 42–43. He left that job after about three months because he found the job "overwhelming" and "stressful" and felt that he was not performing well enough. R. 52. He then worked part-time at the front desk of a tennis club, but quit after about a month due to finding it "very stressful" and experiencing "trouble dealing with the large groups of people sometimes that would come in." R. 45. Eckermann claims that increased responsibilities exacerbate his anxiety, causing rapid thoughts, confusion, and feelings of being overwhelmed. R. 52–53. Eckermann also worked part-time as a tennis instructor from June 2003 to June 2004, a library page for a few weeks in August 2005, a bank teller trainee for a few days in January 2005, a grocery clerk in training for a day in March 2008, and an usher at a movie theater for a few weeks in December 2005. R. 276–87. He claims he left these positions due to anxiety, discomfort around crowds, and fear of other workers. *See* R. 286–87.

According to Dr. Collin Andrew Lodico, a psychologist who has been treating Eckermann since high school, Eckermann successfully controls his active delusions and hallucinations through medication. R. 54–57. However, Eckermann still has a poverty of speech attributable to his schizophrenia, as well as anxiety that interferes with his focus, concentration,

and work pace, and leads—when outside a supportive environment like his home—to ruminative and obsessive thoughts and anxiety-related behaviors such as agitation. R. 61–63. The psychologist claims that Eckermann's symptoms become more pronounced in work settings, especially in the absence of constant reassurance. R. 62–63.

## II. Procedural History

Eckermann's father filed for CIB on his behalf on July 1, 2010. R. 153–156. Eckermann also protectively filed a SSI claim on September 8, 2010. R. 160–164. Eckermann claimed that his ability to work was limited by schizophrenia/generalized anxiety disorder beginning April 1, 2004. R. 22. His applications were denied on August 25, 2010. R. 91. Eckermann requested reconsideration and was denied a second time on October 21, 2010. R. 92. Eckermann requested a hearing, which was held via video conference on January 19, 2012, before Administrative Law Judge ("ALJ") Diane R. Flebbe. R 18–31. ALJ Flebbe found that Eckermann has two severe impairments: schizophrenia and generalized anxiety disorder. R. 21. The ALJ found that these impairments or combination thereof did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) ("Listing of Impairments"). *Id*.

The ALJ then found that Eckermann retained the Residual Functional Capacity ("RFC") to perform:

> A full range of work at all exertional levels but with the following nonexertional limitations: he requires unskilled work that is routine and repetitive, and requires no production paced activities; he requires employment that has no work interaction with the general public and only occasional and superficial work interaction with co-workers and supervisors, other than additional supervision of 2–3 minutes per hour to provide assistance by supervisors with redirection and remaining on task; [he] is limited to only occasional decision making and only within the context of simple and routine tasks described above; and, finally, [he]

> requires work that avoids all exposure to hazardous work environments such as dangerous machinery and unprotected heights.

R. 22. Based on the testimony of a vocational expert, Alfred Walker, ALJ Flebbe found that there were a significant number of jobs in the local and national economy that Eckermann could perform, such as housekeeper, laundry worker, and marker. R. 84–85. As a result of this analysis, the ALJ found that Eckermann was not disabled between April 1, 2004, and February 21, 2012. R. 31. On December 4, 2012, the Appeals Council denied Eckermann's request for review, making the ALJ's decision final. R. 1. Eckermann filed the instant action on April 10, 2013, requesting the Court's review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the Court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id*. at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). The ALJ has a duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)).

Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Scott*, 297 F.3d at 595. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)). If there is an error of law, "reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

## II. Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Child's Insurance Benefits ("CIB"), a claimant must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits.

*See* 20 C.F.R. §§ 404.1566, 416.966. For CIB, a claimant must be under 18 years of age, or 18 years or older and have a disability that began before he turned 22 years old. *See* 20 C.F.R. §§ 404.350. The establishment of disability under the Social Security Act is a two-step process.

First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires to the ALJ to evaluate whether the claimant:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments;

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2, or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the claimant is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 requires the ALJ to proceed to step 4, where the ALJ will make a finding about the claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e).

The RFC "measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied." *Bowen v. New York*, 476 U.S. 467, 471 (1986) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). If, on the other hand, the claimant cannot perform his past relevant work, then the RFC is used in step 5 to determine whether the plaintiff can adjust to other work. 20 C.F.R. § 404.1520(e).

The claimant has the burden of production and persuasion at steps 1 through 4. But once the claimant shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

**DISCUSSION**

Eckermann argues that the ALJ erred by failing to give proper weight to the opinions of his two treating physicians, Dr. Lodico and Dr. William Nissen. Pl.'s Mem in Supp. Mot. Summ. J. 7, ECF No. 11-1. In doing so, Eckermann additionally argues, the ALJ failed to adequately explain why Dr. Nissen's description of his anxiety symptoms did not qualify him as disabled under the Listing of Impairments. *Id.* at 12–13.

**I.  Deference to Physicians' Opinions**

**A. Legal Framework**

In order to determine a claimant's RFC, an ALJ must determine what weight to give the opinions of his treating physicians. 20 C.F.R. § 404.1527. The general rule is that a treating physician's opinion is entitled to controlling weight if it is supported by medical evidence that is not inconsistent with other evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). This "treating physician rule" is a two-step inquiry that the ALJ must conduct when determining the claimant's RFC if a treating physician's opinion is part of the record. First, the

ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence on the record. If so, the physician's opinion is given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). On the other hand, if an ALJ determines that a treating physician's opinion does not deserve controlling weight, then the ALJ must consider factors outlined in the regulations to determine what weight it deserves. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Those factors are: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; (5) the specialization of the treating source; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). If an ALJ rejects a treating physician's medical opinion because it is inconsistent with other evidence in the record, he must articulate his reasons for doing so. *Barthelemy v. Barnhart*, 107 F. App'x 689, 693 (7th Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2).

**B. Analysis**

Eckermann argues that the ALJ erred by failing to consider Dr. Lodico's opinion that Eckermann would require "constant reassurance and a very understanding employer due to his anxiety" and by improperly rejecting the Global Assessment Functioning ("GAF") score of 45 assigned to Eckermann by Dr. Nissen. Pl.'s Mem. in Supp. Mot. Summ. J. 11–12.[1]

1. **Dr. Lodico's Opinion**

The need for a reassuring and patient employer may be an unusual work limitation, but its oddity does not justify the ALJ in entirely ignoring a treating physician's opinion when making her RFC determination. The ALJ expressly incorporated Dr. Lodico's other opinions into her

---

[1] Eckermann also argues that the ALJ misconstrued Dr. Lodico's testimony to indicate that he thought Eckermann could perform some manner of work. Pl.'s Mem. in Supp. Mot. Summ. J. 11. Whether or not the ALJ properly conveyed Dr. Lodico's meaning in her decision is irrelevant, however, as his opinion on RFC carried no weight. A treating physician's opinion as to RFC or disability is not entitled to any weight, because those determinations are "reserved to the Commissioner." 20 C.F.R. § 404.1527(e); *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009).

8

RFC, but did not address Dr. Lodico's oft-repeated statement that Eckermann needs "constant reassurance and a very understanding employer due to his anxiety." R. 26–27. Even if this opinion related to work limitations flowing from Eckermann's mental condition, as opposed to a diagnosis of that condition itself, it nevertheless constitutes a medical opinion and the ALJ had a duty to explain if and why it was not being credited. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinion" to include physician's judgment about claimant's mental restrictions and what he "can still do despite impairment(s)"); *Collins*, 324 F. App'x at 520.

### 2. Dr. Nissen's GAF

A GAF score does not singly dictate an ALJ's finding of disability. *See Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). GAF scores are "useful for planning treatment," but do not necessarily reflect a patient's functional level. *Denton*, 596 F.3d at 425. Rather than rely solely on the bare numerical score, an ALJ may consider the clinician's explanation of impairments that accompanies the score. *Id.* Moreover, a GAF score represents a "snapshot" of the claimant at a particular moment, and does not necessarily reflect their condition in the long term. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). However, if an ALJ rejects a GAF score, the Court must ensure the ALJ properly considered the evidence in doing so. *See, e.g., Yurt v. Colvin*, No. 13-2964, 2014 WL 3362455, at *8 (7th Cir. July 10, 2014); *Walters*, 444 F. App'x at 919. When determining whether the evidence supports a treating physician's opinion, an ALJ may not substitute his own lay judgment that a claimant's ability to engage in certain activities belies his doctor's diagnosis. *See Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong.") ALJs must resist "the temptation to play doctor." *Rohan*, 98 F.3d at 970.

Dr. Nissen assigned Eckermann a 45 GAF score on October 17, 2011. R. 632. A GAF score between 41 and 50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).'" *Williams v. Colvin*, No. 13-3607, 2014 WL 2964078, at *3 (7th Cir. July 2, 2014) (quoting Am. Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)). Dr. Lodico similarly noted that Eckermann had a GAF score of 50—which bears the same functional meaning as a 45, *see id.*—on his Mental Residual Functional Capacity Questionnaire of January 6, 2012. R. 688. He indicated, moreover, that 50 was Eckermann's highest GAF score throughout the preceding year. *Id.* In this context, Dr. Nissen's GAF assessment was no aberrant score with little probative value, but emblematic of multiple treating physicians' assessments over a longer term. *See Punzio*, 630 F.3d at 710.

The ALJ rejected this GAF on the basis that Eckermann "sat quietly, or did well, or was in stable condition" in all his sessions with Dr. Nissen from August 2010 to October 2011. R. 27, 623–33. The ALJ fails to note that, throughout those visits, Dr. Nissen maintained his same diagnosis—that Eckermann suffers from schizoaffective disorder and paranoia exacerbated by stress—and that on each visit, Eckermann was accompanied by at least one, often both, of his parents, whose presence, his doctors have found, ameliorates his symptoms. *See id.* Rather than examining whether Dr. Nissen's opinion was supported by and inconsistent with medical evidence, *see Gudgel*, 345 F.3d at 470, the ALJ improperly rejected that opinion on the basis of her lay intuition about what Eckermann's demeanor during his treatment sessions implied about his mental and social functioning. *See Rohan*, 98 F.3d at 970. And, in doing so, the ALJ failed

to explain, or even note, significant evidence supporting Dr. Nissen's GAF but calling her own assessment into question. *See Indoranto*, 374 F.3d at 474.

Such errors and omissions in weighing treating physicians' opinions warrant remand. *See, e.g., Collins*, 324 F. App'x at 521. On remand, the ALJ must apply the governing standard and grant proper weight to all of Eckermann's treating physicians' opinions, or sufficiently explain her reasons for rejecting those opinions in light of the record evidence as a whole.

## II. Equivalency to Listed Impairments

### A. Legal Framework

An ALJ must mention and provide sufficient analysis of relevant listings when finding a claimant not disabled under the List of Impairments. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). Failing to discuss relevant evidence in light of a listing's analytical framework hinders the court's review of whether the ALJ's factual assessment adequately addressed the listing's criteria. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (citing *Scott*, 297 F.3d at 595). The ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion'" so that the reviewing court "may assess the validity of the agency's final decision and afford [the claimant] meaningful review." *Id.* (quoting *Scott*, 297 F.3d at 595). Conclusory claims that limitations do not meet the criteria are insufficient. *See id.* at 488. Additionally, the ALJ must explain "why strong evidence favorable to the plaintiff is overcome by the evidence on which [the] ALJ relies." *Id.*

### B. Analysis

Listing 12.06 addresses anxiety disorders, and requires that a claimant's impairment meets the criteria in paragraph A and either paragraphs B or C. 20 C.F.R. §§ 404, Subpart P, Appendix 1. In determining that Eckermann's anxiety did not meet or equal Listing 12.06, the

ALJ discusses in some detail why Eckermann's symptoms do not qualify under Paragraph B. *See* R. 21, 24–25. However, her discussion of Eckermann's qualification under Paragraph C is limited to: "The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." R. 21.

This conclusory statement fails to examine evidence relevant to paragraph C and to build a logical bridge from that evidence to the ALJ's decision. *See Giles*, 483 F.3d at 487–88. Omitting such analysis prevents the Court from meaningfully determining whether this finding is supported by substantial evidence. *See Scott*, 297 F.3d at 595. On remand, therefore, the ALJ must sufficiently analyze evidence pertaining to the relevant listings so that the Court may meaningfully review her conclusions regarding Eckermann's disability status.

## CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF No. 11, is GRANTED, and Defendant Commissioner's Motion for Summary Affirmance, ECF No. 14, is DENIED. The decision of the Commissioner is vacated, and this case is remanded for further proceedings consistent with this order.


Entered this 19th day of August, 2014.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE